USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 2/25/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MEOSHA Y. WILLIAMS,

                Plaintiff,

v.

NEW YORK CITY DEPARTMENT OF
EDUCATION; ROSIE SIFUENTES-
ROSADO, *c/o NYC DOE, PS/MS 194*,

                Defendants.

No. 18-CV-11621 (RA)

MEMORANDUM OPINION
& ORDER

RONNIE ABRAMS, United States District Judge:

    Plaintiff Meosha Y. Williams, proceeding *pro se*, brings this action against Defendants New York City Department of Education ("DOE") and Rosie Sifuentes-Rosado, appearing to allege claims under the American Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 *et seq.*; the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. §§ 1320d *et seq.*; New York City Human Rights Law ("CHRL"), N.Y.C. Admin. Code § 8-101; and related state laws.[1] Before the Court is Defendants' motion to dismiss. For the following reasons, the motion is granted.

---

[1] Plaintiff's complaint includes two documents, which together assert claims under the ADA and CHRL. *See* Dkt. 2. While the second document, entitled "Verified Complaint," only alleges claims under the CHRL, Plaintiff checked boxes in the first document, entitled "Employment Discrimination Complaint," reflecting her intent to also assert claims under the ADA. In addition, the Court previously construed the complaint to raise related state law claims. *See* Dkt. 9 (citing *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 158 (2d Cir. 2017), which permits district courts to construe a *pro se* complaint as asserting claims under "well-known" provisions of state law "regardless of [the plaintiff's] failure to check the appropriate blank on a form complaint")). Finally, in her opposition, Plaintiff asserts that Defendants also violated HIPAA. *See* Pl.'s Opp. ¶ 3. Because Plaintiff is *pro se*, the Court may – and will here – consider allegations made in her opposition papers. *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion.").

## BACKGROUND[2]

Plaintiff is a former teacher for the DOE. Beginning in 2011, she was assigned to work at PS/MS 194 in the Bronx, New York. While assigned to PS/MS 194, Sifuentes-Rosado was the school's principal and thus "responsible for overseeing the operations of the school, as well as managing the employees at PS/MS 194." Compl. ¶ 7.[3] Plaintiff alleges that over several months in 2013 – from February to June – she was unlawfully discriminated against by Defendants because of an unspecified disability.

Plaintiff first alleges that she asked Sifuentes-Rosado to revise her teaching schedule in February 2013 because "she was only given one prep period per day, as a middle school teacher, while all other middle school teachers were assigned two prep periods per day." *Id.* ¶ 14. Shortly thereafter, Sifuentes-Rosado agreed to change Plaintiff's schedule.

In March 2013, Plaintiff claims she visited the school nurse, who told her that "she suffered from severe hypertension." *Id.* ¶ 15. Approximately one month later, on April 8, Plaintiff "felt ill" and went to an urgent care center. There, the doctor told her that "she presented flu-like symptoms, but he could not determine the cause for her weakened immune system." *Id.* ¶ 16. According to Plaintiff, he "suggested [her] illness may have been stress related" and "excused [her] from work until April 11, 2013." *Id.* The day after she returned, the school conducted a formal observation of Plaintiff in the classroom, for which she received a rating of "satisfactory." *Id.* ¶ 17.

On April 19, Plaintiff met with Sifuentes-Rosado to discuss completing "her tenure binder." *Id.* ¶ 18. Plaintiff explained to Sifuentes-Rosado that she had struggled to finish her

---
[2] The Court draws the following facts from Plaintiff's complaint, *see* Dkt. 2, and accepts them as true for purposes of this motion. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).

[3] Citations to the complaint are to the "Verified Complaint" beginning on page 11. *See* Dkt. 2.

2

"tenure binder" because of "the high demands that were placed upon her for the school year," including "her failing health, lack of support from school personnel and the fact that [she] was only given one prep period per day." *Id.* Four days later, Sifuentes-Rosado provided Plaintiff with "a letter outlining [her] professional growth, specifically related to the completion of [her] tenure binder for the 2012-13 school year." *Id.* ¶ 20.

Several days later, on April 23, Plaintiff contacted Alice Cooper-Jackson, a union representative, to report that she was being harassed by Sifuentes-Rosado. Cooper-Jackson suggested that Plaintiff meet with her at the union's office. Plaintiff contacted Cooper-Jackson again on April 25. The complaint does not state whether Plaintiff met with Cooper-Jackson.

On April 26, Plaintiff met with Sifuentes-Rosado and several other PS/MS 194 administrators "regarding tenure recommendations." *Id.* ¶ 25. At the meeting, which Plaintiff describes as being "intense and threatening," Plaintiff was told that she would not be recommended for tenure. *Id.* Following the meeting, Plaintiff again reached out to Cooper-Jackson "to discuss more harassing treatment [that] she experienced as PS/MS 194." *Id.* ¶ 26. Cooper-Jackson suggested that they speak over the phone, but it is not clear whether they did so.

On April 29, Plaintiff resigned, to be effective on June 26, 2013 – the last day of the school year. Plaintiff asserts that this was a "forced resignation" made "while under the stress of looming termination." *Id.* ¶ 27.

Plaintiff then alleges that, beginning on May 10, she experienced a number of medical issues requiring several leaves of absence. On May 10, "still undiagnosed," she met with a doctor at Montefiore Medical Center who conducted several tests. *Id.* ¶ 29. She later asked Sifuentes-Rosado for permission to take leave to attend a follow-up appointment on May 24, but her request was denied.

3

On May 17, Sifuentes-Rosado scheduled a meeting with Plaintiff and suggested that Plaintiff "bring [a] union representative because the meeting may lead to disciplinary action." *Id.* ¶ 32. On May 21, Plaintiff, with a union representative, met with Sifuentes-Rosado, who allegedly warned her "that disciplinary action would be taken, if [she] took medical leave on May 24, 2013, without . . . Sifuentes-Rosado's written approval." *Id.* ¶ 34. During this meeting, in which Plaintiff was purportedly "berated, verbally abused and threatened," she suffered a panic attack, requiring assistance from EMS. *Id.* ¶ 35. While EMS was assisting her, Sifuentes-Rosado and another school employee allegedly attempted to enter the room where Plaintiff was being treated. Although Plaintiff told them that "they were not welcome" and "repeatedly asked them both to leave," they refused to do so. *Id.* Plaintiff was later taken to Montefiore Medical Center, discharged that day, and given "documented medical leave until May 23, 2013." *Id.*

Plaintiff states that she remained on medical leave "for her disabilities" from May 30 to June 13. *Id.* ¶ 36. Although she was taking a leave of absence, "Sifuentes-Rosado asked [her] to perform work duties[.]" *Id.* On June 13, Plaintiff returned to work and "submitted legitimate medical documentation for her absence." *Id.* ¶ 37. That morning, Sifuentes-Rosado held an "impromptu meeting," at which she "requested lesson plans from [Plaintiff] for all subject-areas for her 6/7/8th grade class, for that day." *Id.* ¶ 38. Around this time, Plaintiff e-mailed Sifuentes-Rosado to learn why "her attendance to her homeroom 8th grade class' graduation on June 21, 2013 was not permitted," but she did not receive a response. *Id.* ¶ 39.

On June 17, Plaintiff was notified that she "was being reassigned to a new classroom until the end of the school year." *Id.* ¶ 40. When she asked Sifuentes-Rosado to explain this decision, she was not provided "a valid, documented reason." *Id.* Several hours later, Sifuentes-Rosado ordered her to immediately appear at the new classroom without her personal

4

belongings. Plaintiff alleges that Sifuentes-Rosado "yelled/screamed" at her during their interaction and "instructed [Plaintiff's] colleagues and her students to write defaming letters concerning [Plaintiff]." *Id.* ¶ 40(b)(c). Plaintiff further asserts that Sifuentes-Rosado sent "two faculty members" to Plaintiff's doctor's office to "verify [her] doctor visits and [the] doctor's recommended course of treatment." *Id.* ¶ 40(g). The next day, Sifuentes-Rosado also "generated a letter, outlining frameworks for disciplinary action, unsatisfactory rating for the year, and termination for [Plaintiff]." *Id.* ¶ 41.

On June 26, the effective date of Plaintiff's resignation, Plaintiff went to school and discovered that her belongings had been packed up and left in the hallway.[4] A "heated conversation" between her and Sifuentes-Rosado allegedly ensued. Soon after, Plaintiff was asked to leave the premises. Plaintiff was also given a letter noting that she had received an "unsatisfactory" performance review and been disciplined.

On January 28, 2014, Plaintiff filed an administrative charge with the New York City Commission on Human Rights and the Equal Employment Opportunity Commission ("EEOC"). *See* Dkt. 2. She received a Notice of Right to Sue from the EEOC on September 21, 2018. *See id.* Plaintiff subsequently filed this action on December 10, 2018. Defendants filed the present motion to dismiss on May 6, 2019, which Plaintiff has opposed.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing

---

[4] Although the complaint clearly asserts that Plaintiff took medical leaves of absence from April 8 to April 11, *id.* ¶ 16, May 21 to May 23, *id.* ¶ 35, and May 30 to June 13, *id.* ¶ 36, the complaint includes less clear allegations regarding additional leaves of absence from June 18 to June 26, *see id.* ¶¶ 41-43.

5

a motion to dismiss, the Court "constru[es] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008). The Court, however, need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Where the plaintiff is *pro se*, her complaint "must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims it suggests. Nonetheless, a *pro se* complaint must state a plausible claim for relief." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (internal citation omitted).

## DISCUSSION

Plaintiff alleges violations of the ADA and HIPAA, as well as related claims under New York state and municipal law. The Court addresses these claims in turn.

### I. ADA Claim

Plaintiff alleges discrimination, retaliation, hostile work environment, and failure to accommodate under the ADA against both Defendants.[5] "A plaintiff suing for disability discrimination under the ADA bears the initial burden of establishing a *prima facie* case." *Rodal v. Anesthesia Grp. Of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004). To establish a claim under the ADA, a plaintiff must plausibly allege "that (1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by her

---

[5] Defendants contend that "any allegations in the Complaint concerning events occurring prior to April 3, 2013 . . . are time-barred." Defs.' Mot. at 8. Defendants specifically point to two allegations: Plaintiff's request for a schedule change in February 2013 and her visit to the school nurse in March 2013. A plaintiff asserting claims under the ADA must file an administrative charge with an agency within 300 days of the alleged conduct. Because Plaintiff did not file her EEOC charge until January 28, 2014, Defendants are correct that these two allegations fall outside of the 300-day period. Nonetheless, the Court may still consider these two allegations – along with Plaintiff's other allegations, which Defendants do not dispute as time-barred – pursuant to the "continuing violations" doctrine. *See Christiansen v. Omnicom Grp., Inc.*, 167 F. Supp. 3d 598, 612 (S.D.N.Y. 2016) (applying the "continuing violations" doctrine to the ADA so long as "at least one discrete act of discrimination occurred within the 300 day period").

6

employer; (3) she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) she suffered an adverse employment action; and (5) the adverse action was imposed because of her disability." *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015).

### A. Defendant Sifuentes-Rosado

Plaintiff's ADA claims against Sifuentes-Rosado must be dismissed with prejudice. It is widely held by courts in this circuit that the ADA does not provide for individual liability. *See Gomez v. N.Y.C. Police Dep't*, 191 F. Supp. 3d 293, 302-03 (S.D.N.Y. 2016) ("[T]here is no individual liability under the ADA."); *Lane v. Maryhaven Ctr. of Hope*, 944 F. Supp. 158, 161-62 (E.D.N.Y. 1996) ("[D]istrict courts within the Second Circuit to consider the issue have concluded that there is no cause of action under the ADA against an individual as an agent of his or her employer." (collecting cases)); *see also Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010) (holding that, "in the context of employment discrimination, the retaliation provision of the ADA . . . cannot provide for individual liability").

### B. Defendant DOE

The DOE is also entitled to dismissal of the ADA claims because Plaintiff has failed to plausibly allege, as required to establish a *prima facie* case, that she suffered from a disability as defined by the statute. Without this threshold showing, the Court cannot properly analyze her allegations as to any of the ADA claims – discrimination, retaliation, hostile work environment, or failure to accommodate.

The ADA defines a "disability," as relevant here, to be "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(a). "Not every impairment is a 'disability' within the meaning of the ADA; rather,

there are two requirements: the impairment must limit a major life activity and the limitation must be substantial." *Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005) (explaining that "[t]he existence of a disability must be determined on a 'case-by-case' basis"). "In other words, the ADA protects only a limited class of persons – individuals who suffer from impairments significantly more severe than those encountered by ordinary people in everyday life." *Sussle v. Sirina Prot. Sys. Corp.*, 269 F. Supp. 2d 285, 300 (S.D.N.Y. 2003) (citation omitted); *see also Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198 (2002) ("The impairment's impact must be permanent or long-term.").

In her complaint, Plaintiff never specifies what disability she allegedly has.[6] Rather, she broadly asserts that she "suffered from disabilities." Compl. ¶ 9; *see also id.* ¶ 2 (stating that she "became noticeably ill due to my medically documented disability"); *id.* ¶ 36 (asserting that she "took documented medical leave for her disabilities"). But these conclusory allegations of a disability are insufficient even at the pleading stage. *See Schenk v. Verizon*, No. 10-CV-6281 (GBD), 2011 WL 6778284, at *2 (S.D.N.Y. Dec. 20, 2011) ("Plaintiff's statement 'that she is disabled/homebound' is insufficient to survive a motion to dismiss."). In *Padilla v. New York State Department of Labor*, for instance, the plaintiff alleged "that [he] was 'on leave, a period of disability,' and that he took leave for 'a period of disability.'" No. 09-CV-5291 (CM), 2010 WL 3835182, at *4 (S.D.N.Y. Sept. 13, 2010). Describing this as "vague, conclusory references to

---

[6] To the extent that Plaintiff alleges that she has an undiagnosed disability, *see* Compl. ¶ 29 (stating that she was "still undiagnosed" in May 2013 and met with a doctor who "administered a few tests"); *id.* ¶ 16 (alleging that she was suffering from a "deteriorating physical condition" and "failing health" in April 2013), this would still be insufficient for the Court to conclude that she has plausibly alleged a disability within the meaning of the ADA. *See Taggart v. Moody's Inv'rs Serv., Inc.*, No. 06-CV-3388 (PKC), 2007 WL 2076980, at *7 (S.D.N.Y. July 17, 2007) (holding that allegations of "undiagnosed maladies" are too conclusory to allege a disability under the ADA); *Graham v. Boehringer Ingelheim Pharms., Inc.*, 451 F. Supp. 2d 360, 372 (D. Conn. 2006) (explaining that "mental and physical examinations to determine fitness for duty are not enough to suggest that an employee is regarded as . . . disabled").

[a] purported disability," the court concluded that "[s]uch allegations fall well short of pleading a 'disability' within the meaning of the ADA." *Id.*

Although the complaint does reference some ailments that Plaintiff suffered between February and June 2013, it does not change the Court's conclusion that Plaintiff has failed to plausibly allege a disability within the meaning of the ADA. Plaintiff alleges, for example, that she was told by the school nurse in February 2013 that she "suffered from severe hypertension"; she "felt ill" in April 2013 and was "informed . . . that she presented flu-like symptoms"; and she "experienced a panic attack" in May 2013. Compl. ¶¶ 15, 16, 35. Even though these factual assertions are more specific, they still do not plausibly allege a disability. This is particularly true given that the claimed ailment differs in each of these allegations.

Nor could these allegations satisfy the ADA's definition of disability, which requires "an individual [to] have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Sussle*, 269 F. Supp. 2d at 301. Plaintiff, however, has not explained how "severe hypertension" or "flu-like symptoms," Compl. ¶¶ 15, 16, "substantially limit[ed] one or more major [of her] life activities." 42 U.S.C. § 12102(1); *see also Toyota Motor Mfg., Ky., Inc.*, 534 U.S. at 196 ("'[S]ubstantially' in the phrase 'substantially limits' suggests 'considerable' or 'to a large degree.'"). Applying similar reasoning, courts in this district have dismissed ADA claims based on comparable allegations. *See, e.g., Woolf v. Bloomberg L.P.*, No. 16-CV-6953 (PKC), 2019 WL 1046656, at *10 (S.D.N.Y. Mar. 5, 2019) ("Periodic migraine headaches do not amount to a disability under the ADA unless the plaintiff demonstrates that they result in a substantial limitation to a major life activity."); *Graham v. Macy's Inc.*, No. 14-CV-3192 (PAE), 2015 WL 1413643, at *3 (S.D.N.Y. Mar. 23, 2015) (holding that allegations regarding a plaintiff's bipolar disorder are insufficient

because "the Complaint does not explain how that impairment 'substantially limits one or more' of [the plaintiff's] 'major life activities'"); *Moore v. Time Warner GRC 9*, 18 F. Supp. 2d 257, 260 (W.D.N.Y. 1998) ("There is no evidence in this case that Moore's diabetes or hypertension substantially limited any major life activity, including Moore's ability to work.").

Finally, the Court notes that, although Plaintiff alleges that she was required to take several medical leaves of absence, this too does not plausibly allege a disability under the ADA. *See* Compl. ¶¶ 30, 38. First, as Defendants argue, "[t]he Complaint does not identify the reasons for plaintiff's repeated medical leave of absence[.]" Defs.' Mot. at 4. Simply asserting an inability to come to work for unspecified medical reasons cannot, on its own, demonstrate that Plaintiff was suffering from a substantial impairment. Moreover, "the decisive weight of authority holds that an impairment that prevents an individual from working for a period of one month, and that is not expected to recur with similar consequences in the foreseeable future, does not constitute a disability within the meaning of the ADA." *McIntosh v. Brookdale Hosp. Med. Ctr.*, 942 F. Supp. 813, 820 (E.D.N.Y. 1996) (collecting cases). Here, Plaintiff does not allege a leave of absence lasting more than several days. Therefore, without more particularity regarding the nature of her alleged disability and how it substantially limited her life activities, the Court cannot plausibly infer that Plaintiff has a disability as defined by the ADA.[7]

In any event, Plaintiff's claims fail nonetheless because she has not alleged that the DOE was aware that she had a disability. "It is, of course, elemental that an employer could not have discriminated against a plaintiff *because of* her disability if it was unaware that the plaintiff was,

---

[7] Plaintiff might also be attempting to establish a *prima facie* case under the "perceived-disability doctrine." *See, e.g.*, Compl. ¶ 47 (alleging that she was "discriminated against . . . on the basis of her perceived and/or actual disability"); *see also* 42 U.S.C. § 12102(1)(c) (defining a "disability" alternatively as "being regarding as having an impairment"). Pursuant to this doctrine, "a person is considered disabled for purposes of the ADA if that person is regarded as having an impairment that substantially limits a major life activity." *McIntosh*, 942 F. Supp. at 821. This doctrine, however, does not salvage Plaintiff's case. Taking several days off of work and having a panic attack during a meeting is insufficient for Defendants to have reasonably perceived Plaintiff to have had a disability.

in fact, disabled." *Cozzi v. Great Neck Union Free Sch. Dist.*, No. 05-CV-1389, 2009 WL 2602462, at *14 (E.D.N.Y. Aug. 21, 2009); *see also Goonewardena v. New York*, No. 05-CV-8554, 2008 WL 4090467, at *10 (S.D.N.Y. Aug. 26, 2008) (requiring a plaintiff to have given the employer notice of the "nature of the disability").

The complaint never asserts that Plaintiff notified Defendants of any specific disability. In her opposition, Plaintiff argues that Sifuentes-Rosado was "made aware of medical accommodations that [her] doctor requested." Pl.'s Opp. ¶ 3. Plaintiff might also contend that the DOE had – or should have had – notice of a disability because the school nurse diagnosed her with "severe hypertension" and due to the panic attack she had during an in-school meeting. Compl. ¶¶ 15, 25. But these allegations are insufficient pursuant to this circuit's case law. "It is well established in the ADA context that an employer's knowledge of an employee's limitations or symptoms does not provide proof that the employer knew that the condition or symptoms were disabling." *Brown v. Connecticut*, No. 08-CV-1478 (MRK), 2010 WL 2220580, at *17 (D. Conn. May 27, 2010); *see also McCoy v. Morningside at Home*, No. 11-CV-2575 (LTS), 2014 WL 737364, *4 (S.D.N.Y. Feb. 25, 2014) ("An employer's awareness that a plaintiff suffered some injury does not establish that an employer had notice that the plaintiff was disabled."); *Cozzi*, 2009 WL 2602462, at *14 ("[A]n employer's knowledge of a plaintiff's symptoms does not establish, as a matter of law, that it knew the plaintiff was disabled.").

On a final note, the bulk of Plaintiff's allegations regarding her alleged medical ailments took place after Plaintiff had already tendered her resignation on April 29, 2013. Therefore, even if Plaintiff could plausibly allege that the DOE was on notice of a disability as a result of those post-April 29 ailments, it is unlikely that Plaintiff could demonstrate the requisite causation between any adverse action taken and that alleged disability.

11

As such, Plaintiff's ADA claims against the DOE are dismissed for failure to establish a *prima facie* case.

## II. HIPAA Claim

The Court will liberally construe Plaintiff's complaint as also alleging a claim under HIPAA. *See* Pl.'s Opp. ¶¶ 3, 7; *see also* Defs.' Reply at 3 (acknowledging that Plaintiff asserts a cause of action under HIPAA). Plaintiff argues that Defendants violated HIPAA on June 17, 2013, when Sifuentes-Rosado ordered two faculty members to go to her doctor's office to verify her medical condition and treatment. *See* Compl. ¶ 40(g); Pl.'s Opp. ¶ 3 (asserting that the faculty members' June 17, 2013 visit to her doctor's office was "unauthorized," "unethical[,] and a violation of [her] rights").

Plaintiff's HIPAA claim must be dismissed, however, because the statute of limitations has run. Any claim "under HIPAA would not have a longer statute of limitations than . . . the ADA . . . claims at issue." *Bond v. Connecticut Bd. of Nursing*, 622 F. App'x 43, 44 (2d Cir. 2015) (mem.). In New York, the statute of limitations for ADA claims is three years.[8] Here, the HIPAA claim stems from conduct that allegedly occurred in June 2013 – five years prior to the filing of Plaintiff's complaint. As such, the three-year statute of limitations for Plaintiff's HIPAA claim has passed.

The Court further notes that, even if this claim was not time-barred, it would also likely fail for the independent reason that "[i]t is doubtful that HIPAA provides a cause of action at all." *Bond*, 622 F. App'x at 44; *see also Warren Pearl Constr. Corp. v. Guardian Life. Ins. Co. of*

---

[8] The ADA does not include an explicit statute of limitations nor does the "four-year federal catch-all statute of limitations" apply. *Purcell v. N.Y. Inst. of Tech. – Coll. Of Osteopathic Med.*, 931 F.3d 59, 62 (2d Cir. 2019). In such situations, courts apply "the most appropriate or analogous state statute of limitations." *Id.* at 63. Recently, the Second Circuit considered this very question regarding the statute of limitations for ADA claims brought in New York. Explaining that personal injury actions is the most analogous state claim, the Circuit held that New York's three-year statute of limitations for personal injury actions applies to ADA claims. *Id.* at 62-63.

*Am.*, 639 F. Supp. 2d 371, 377 (S.D.N.Y. 2009) ("[C]ourts have held that HIPAA does not provide for either an express or implied private right of action." (collecting cases)).

## III. State & Municipal Claims

Finally, Plaintiff alleges violations of New York state and municipal law. Federal district courts have supplemental jurisdiction over non-federal law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). A district court, however, "may decline to exercise supplemental jurisdiction over a claim" once it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003). Generally, "if a plaintiff's federal claims are dismissed before trial, the state claims should be dismissed as well." *Brzak v. United Nations*, 597 F.3d 107, 113-14 (2d Cir. 2010) (citation omitted).

Here, declining jurisdiction over Plaintiff's state and municipal claims would not disserve the principles of judicial economy, convenience, or fairness. The Court has addressed and dismissed Plaintiff's federal claims under the ADA and HIPAA and done so early in the litigation. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 123 (2d Cir. 2006) (reversing the district court's exercise of supplemental jurisdiction because "Plaintiffs' federal-law claims were eliminated on a motion to dismiss, prior to the investment of significant judicial resources"). Accordingly, the Court declines to exercise supplemental jurisdiction here and thus does not address whether Plaintiff has stated a claim for relief under state or municipal law

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted. Plaintiff will be given an opportunity to amend her complaint. Should she choose to do so, she shall file the amended complaint no later than March 25, 2020. Plaintiff is advised that, if she would like to obtain assistance with this case, she may contact the New York Legal Assistance Group ("NYLAG") Legal Clinic for Pro Se Litigants in the Southern District of New York. A flier containing information about the NYLAG clinic is attached to this opinion. The Clerk of Court is respectfully directed to terminate the motion pending at docket entry 16.

Dated: February 25, 2020
New York, New York

_____
Ronnie Abrams
United States District Judge



Since 1990, NYLAG has provided free civil legal services to New Yorkers who cannot afford private attorneys.

# Free Legal Assistance for Self-Represented Civil Litigants in Federal Court in Manhattan and White Plains

The NYLAG Legal Clinic for Pro Se Litigants in the Southern District of New York is a free legal clinic staffed by attorneys and paralegals to assist those who are representing themselves or planning to represent themselves in civil lawsuits in the Southern District of New York. The clinic, which is not part of or run by the court, assists litigants with federal civil cases including cases involving civil rights, employment discrimination, labor law, social security benefits, foreclosure and tax.

To make an appointment for a consultation, call (212) 659-6190 or come by either clinic during office hours. Please note that a government-issued photo ID is required to enter either building.

**The clinic offers in-person appointments only. The clinic does not offer assistance over the phone or by email.**

Thurgood Marshall
United States Courthouse
Room LL22
40 Centre Street
New York, NY 10007
(212) 659 6190

Open weekdays
10 a.m. - 4 p.m.
Closed on federal and court holidays

The Hon. Charles L. Brieant Jr.
Federal Building and Courthouse
300 Quarropas St
White Plains, NY 10601
(212) 659 6190

Open Wednesday
1 p.m. - 5 p.m.
Closed on federal and court holidays

Disclaimer: The information contained herein is for informational purposes only and is not legal advice or a substitute for legal counsel, nor does it constitute advertising or a solicitation.

